## Case No. 4,276.

### EDDY v. BADGER et al.

[8 Biss. 238; [2] 6 Reporter, 194; 10 Chi. Leg. News, 323; 24 Int. Rev. Rec. 212.]

Circuit Court, N. D. Illinois. June 18, 1878.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

Herbert, Quick & Miller, for complainant.
John H. Thompson, for defendants.

HARLAN, Circuit Justice (orally, after stating the facts). Waiving any consideration of the question, whether or not Leiter can raise that point in this case, and assuming that he may do so, I have been unable to concur in the views presented so forcibly by the counsel for defendant. The weight of the evidence is that Mr. Badger himself initiated the movement to obtain this loan. Certain it is that Mr. Seelye, who passed between the borrower and lender, had not, theretofore, represented Mr. Eddy in any like business. The transaction was just this: Badger applied to procure a loan of $30,000; Eddy agreed to loan that amount at ten per cent.; nothing was said by Eddy to the effect that Seelye was to be paid commissions, as a condition of the loan. I find no fact or circumstance in the case, showing that any obligation rested upon Eddy to compensate Seelye for effecting the loan. After the loan was completed, or, perhaps, at the time it was consummated, the question of commissions was raised between Seelye and Badger, and Badger finally paid him $750 for his commission. Badger did not claim that Eddy was under obligation to pay commissions.

The question in the case is whether the payment of that $750 commissions by Badger to Seelye is to be regarded as ·interest accepted or received by the lender, thereby rendering the contract usurious. I am unable, from the testimony, to come to any other conclusion than that Badger was bound to Seelye for the commissions. But whether he was bound or not, it was no part of the contract or understanding between the lender and borrower that Seelye was to receive commissions for securing the loan; consequently the lender is not affected by the arrangement between Seelye and Badger, whereby the latter paid commissions to the former. All the cases referred to by counsel for the defendant are consistent with this view. I have been referred to no case which certainly establishes a contrary doctrine. The inquiry in all the adjudged cases is, whether the particular arrangement, alleged to be tainted by usury, was a device to evade the usury laws.

In each case cited by defendant, some fact or circumstance is found which justifies the conclusion that the agreement between the parties was a mere device to evade the usury laws. There is absolutely nothing in this case to show that the payment of the commissions to Seelye by Badger was either a part of the contract or was imposed by the lender as a condition of the loan, except the bare fact that the person through whom the loan was secured, received these commissions from the borrower. I am not able upon those facts to come to the conclusion that there was a device to evade the usury laws. I know of no reason why a man, desiring to borrow .money, may not himself.say to an individual, "Get me a loan for the amount I·want, and I will pay you· a commission." If that be the transaction, and the whole transaction, the fact that the borrower pays to that person a commission for his services—not by virtue of any understanding or arrangement with the lender—is insufficient to sustain the charge of usury.

The case which learned counsel for defend-. ant cited, decided by Judge Dillon, reported in the Central Law Journal, of May ̃20, 1876 (Moon v. Union Mutual Life Ins. Co. [Case No. 9,777]), is not at all in conflict with this view. On the contrary, I do not hesitate to say that the decision of Judge Dillon was exactly right. In the report of that case it appears that McMechan, a merchant in Nebraska City, being financially embarrassed, applied to the Union Mutual Life Insurance Company of Maine, through J. F. Kinney, for a loan of twelve thousand dollars. Pending the negotiations therefor, it was learned that that sum would not be sufficient to accomplish the desired object, and it was therefore proposed to increase the loan to twenty thousand dollars. The conditions upon which this loan was made, were, that McMechan should take and pay for $36,000 of life insurance on the $12,000 portion of the loan, and for $40,000 insurance upon the $8,000 portion of the loan—the usual proportion, $5 of insurance for $1 of money loaned, being reduced in consideration of the large amount. There was, says the report of the case, a further condition imposed by the lender, that the borrower should pay to Kinney, the general agent of the insurance company for Nebraska, three per cent. commissions upon the amount of loan for obtaining the loan, and the additional sum of $500 for services rendered in the case. From the sum to be advanced, there was deducted $1,456 for life insurance, premiums, etc.

Now, Judge Dillon held that that contract was usurious. "I find," says he, "these three mortgages are usurious. This result I reach upon the special circumstances of this case—placing it largely upon the ground that the ̃requiring of such a large and extraordinary amount of life insurance, not only upon the life of the borrower, but upon that of others, as a condition of making the loan, is a direct loss to the borrower and in violation of the purpose and policy of the usury laws."

It is stated, in the report of the case, that in the accounts between ·the parties, the three per cent. commission was disallowed by the court. I am not sure that I would not have gone a little further in that case than Judge Dillon did. If there was any proof in this

case, if it could be fairly inferred from all the evidence that it was one of the conditions of the loan imposed, directly or indirectly, by the lender, that the borrower should pay commissions, the contract would then be usurious. It should then be fairly regarded as a mere device to evade the statutes upon usury.

But as already stated, there is no evidence to that effect. It is the naked case of a lending of $30,000, without any obligation, understanding or contract, on the part of the lender, that the borrower was to pay commissions to Seelye. The payment of commissions to him was the act of the borrower alone, uninfluenced by any suggestion from the lender. My conclusion, therefore, is, that the master's report should be sustained, and a decree rendered for the complainant.